UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 17 CR 226 |
| v. | Judge John Z. Lee |
| DINIKA LAWRENCE | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The defendant, Dinika Lawrence, is a serial bank robber who robbed three Chase Banks within a period of nine months. For the reasons stated below, the government's position is that a sentence within the Guideline range of 70-87 months' imprisonment is appropriate, followed by a three-year term of supervised release. This sentence would be sufficient and not greater than necessary to achieve all of the sentencing goals articulated in 18 U.S.C. § 3553(a).

## I.    Procedural History

On May 4, 2017, defendant Dinika Lawrence, was indicted for three counts of bank robbery, in violation of Title 18, United States Code, Section 2113(a). Dkt. No. 18.  On April 3, 2018, defendant appeared before the Honorable John Z. Lee and entered a plea of guilty to the indictment. Dkt. No. 57.

## II.    Offense Conduct and Factual Background

### A.  *June 23, 2016, Robbery*

On June 23, 2016, at approximately 3:42 p.m., Lawrence entered the Chase bank branch located at 244 W. 144th St, Riverdale, Illinois and approached a bank

employee, telling her she wanted to open an account. The employee took Lawrence to her cubical and Lawrence presented her with a demand note which read "stay calm, I have a bomb strapped to me, men from ISIS are holding my kids hostage three blocks from here, the timer is set for 12 minutes, I need $20,000 in $20s." Lawrence then told the bank employee ISIS was watching her with a camera and had a way to detonate the bomb. Lawrence showed the bank employee a black device which appeared to be a digital clock or timer hanging around her neck. In response, the bank manager gave the defendant $20,000 in $20 bills and Lawrence exited the bank. At the time of the robbery, the deposits of Chase Bank were FDIC insured.

B. *September 9, 2016, Robbery*

On or about September 9, 2016, Lawrence entered the same Chase Bank branch located at 244 W. 144th St, Riverdale, Illinois and approached the teller window. Lawrence said to the teller, "I have a bomb, you have 2 minutes to give me $100,000." Lawrence opened her sweater and displayed a white pager like device hanging from a cord around her neck. The teller told Lawrence that she would have to go behind the teller line to get the money. As the teller entered the teller area and approached the teller window of her co-worker, Lawrence warned them, "Don't touch anything." Both bank employees then entered the bank vault and removed $66,000 and placed the cash into a plastic blue and white Chase Bank bag. One of the tellers then placed that plastic bag containing the money into a drawer at the last teller window. Lawrence told the teller, "I don't want any marked money." After the teller

2

assured Lawrence that the money was not marked, Lawrence took the bag and left the bank. At the time of the robbery, the deposits of Chase Bank were FDIC insured.

C.        *March 24, 2017, Attempted Robbery*

On or about March 24, 2017, at approximately 5:30 p.m., Lawrence attempted to rob the Chase Bank branch located at 12657 S. Ridgeland Ave, Palos Heights, Illinois. Lawrence, entered the bank, approached the teller counter and presented the teller with a demand note. The teller backed away from the window, and Lawrence said something to the effect of, "Give me everything." The teller then pressed the alarm button. Lawrence took the note with her and walked out of the bank without receiving any money. At the time of the robbery, the deposits of Chase Bank were FDIC insured.

**Guidelines Calculation**

The government agrees with the Guidelines calculations set forth in the PSR.

The November 2016 Guidelines Manual was used to calculate the offense level.

**A.    Defendant's Adjusted Offense Level is 26**

| Guideline | Section | Levels |
|---|---|---|
| **Count One:** Base Offense Level: 20<br>Financial Institution Property Taken: +2<br>Brandished a dangerous weapon: +3 | 2B3.1(a)<br>2B3.1(b)(1)<br>2B3.1(b)(2) | 25 |
| **Count Two:** Base Offense Level: 20<br>Financial Institution Property Taken: +2<br>Brandished a dangerous weapon: +3<br>Loss exceeded $20,000 but was less than $95,000 | 2B3.1(a)<br>2B3.1(b)(1)<br>2B3.1(b)(2)<br>2B3.1(b)(7)(B) | 26 |
| **Count 3:**<br>Base Offense Level: 20<br>Financial Institution Property Taken: +2 | 2B3.1(a)<br>2B3.1(b)(1) | 22 |
| Three Offense Level Increase  +3 | 3D1.2(d) | 29 |
| Acceptance of Responsibility | 3E1.1(a) & (b) | -3 |
| **Total Offense Level** | | **26** |

**B.    Defendant's Criminal History Results in Category of II**

The government agrees with the Probation Office's finding that defendant has

a criminal history category of II.

**C.    Defendant's Guidelines Range: 70-87 Months**

With a criminal history category of II and an adjusted offense level of 26,

defendant's Guidelines sentencing range is 70-87 months' imprisonment.

### III.     Sentencing Recommendation

It is the Government's position that a sentence within the advisory Guidelines range of 70-87 months will provide a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. Specifically, a sentence within the guidelines range will appropriately reflect the seriousness of defendant's offense, promote respect for the law, provide just punishment for defendant's crime, and afford adequate deterrence to similar criminal conduct.

### A.     Applicable Legal Standard

Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In order to determine the "particular" sentence to impose, the court must consider the familiar statutory factors listed in Section 3553(a)(1)-(7). One of those factors is the advisory Guidelines range, and another is the Sentencing Commission's policy statements. *See* 18 U.S.C. §§ 3553(a)(4), (a)(5). Although the Guidelines are advisory, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Indeed, the Supreme Court has made clear that a district court should begin a sentencing hearing by calculating the advisory Guidelines range. *See id.* at 49; *see also United States v. Glosser*, 623 F.3d 413, 418 (7th Cir. 2010).

For two reasons, the Court should give serious consideration to the advisory Guidelines range. First, the Guidelines are the *sole* factor under Section 3553(a) that provides an objective sentencing range that can practicably promote the overall goal

of minimizing unwarranted sentencing disparities, which is itself a statutorily mandated factor under Section 3553(a)(6). *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *Id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and that there is "broad" sentencing discretion post-*Booker*, *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Goldberg*, 491 F.3d

668, 673 (7th Cir. 2007). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

### B. The Section 3553(a) Factors Make Clear that a Guideline Sentence is Appropriate

Full consideration of the relevant Section 3553(a) factors demonstrates that a Guideline sentence is appropriate in this case.

#### 1. *Seriousness of the Offense*

First, a sentence within the Sentencing Guidelines range reflects "the seriousness of the offense" committed by defendant and "provide[s] just punishment for the offense." *See* 18 U.S.C. §3553(a)(2)(A); *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007) (The Guidelines are "drafted by a respected public body with access to the best knowledge and practices of penology"); *United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2007) ("the Guidelines reflect a carefully considered assessment of the seriousness of federal crimes"). Bank robbery is a clear example of a violent crime. *See* 18 U.S.C. § 3156(a)(4)(A) ("A crime of violence means an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another"). Additionally, bank robbery is a serious offense that threatens public safety and the stability of financial institutions. That is particularly true where, as here, defendant committed three bank robberies in a short period of time and did so by threatening the lives of the bank employees.

7

The defendant was wearing what appeared to be a timer on a bomb and showed the tellers so they would get her the large sums of money she requested. Each of the victim tellers was merely reporting to work on the day the defendant decided to walk in and rob their respective banks. The defendant's actions placed each of them in a position where they were placed in fear for their lives simply for trying to make a living.

## 2. *Promoting Respect for the Law and Deterrence*

A sentence within the Guideline range would promote respect for the law and deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Such a sentence would deter this defendant specifically, who has a severe drug problem which appears to trigger her criminal behavior. PSR ¶97. Her need for opiates will encourage more criminal behavior unless she deems the consequences of that criminal behavior onerous. Consequently, a sentence within the Guidelines range should be imposed to impress upon defendant the need for her to reform her conduct.

Additionally, sentences that include significant terms of imprisonment send a clear message to potential bank robbers that their crimes carry serious consequences, one of which will result in them being removed from society for a substantial period of time if they pursue this kind of crime. This need for general deterrence is particularly true in the Northern District of Illinois. According to statistics maintained by federal and local law enforcement authorities, approximately 148 bank robberies occurred in the Chicago area in 2017.

### 3. History and Characteristics of Defendant

A sentence within the Guidelines range of 70-87 months appropriately takes into account defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). The defendant does not have a long criminal history. However, her criminal activities have increased in severity and as previously noted, are related to her addiction to controlled substances specifically, heroin. PSR, ¶¶ 95-97. The defendant indicated that as long as she has physical pain she will continue to use heroin because physicians will not prescribe her strong enough medications. PSR ¶ 98. This is obviously troubling because it indicates she will likely continue to have contact with the criminal justice system after her incarceration. This is especially true given that the defendant is married to her mother's former drug dealer. PSR ¶ 80. The public needs to be protected from the defendant and a guidelines sentence will further that objective.

Additionally, section 3553(a)(2)(D) requires this Court to consider the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. As noted in detail throughout the PSR, this defendant is addicted to opiates. During her interview with probation, defendant reported use of heroin 15 times per day. PSR, ¶ 97. While on pre-trial release, the defendant violated her conditions of bond a number of times by using opiates during in-patient treatment. PSR, ¶ 98.

The government acknowledges that defendant has mental health and serious substance abuse issues that are difficult to combat. Nevertheless, it appears that

unless the root cause of defendant's continued criminal conduct have not been addressed, she continues to pose a threat to the community. Defendant's need for mental health and substance abuse treatment is consistent with a sentence of imprisonment, because the Bureau of Prisons can offer treatment programs for defendants suffering from mental illness and substance abuse. Furthermore, a term of imprisonment would afford the defendant an opportunity to participate in and commit to a mental health treatment regimen. *United States v. Zohfeld*, 595 F.3d 740, 743 (7th Cir. 2010) (affirming Guideline range sentence and holding that, in imposing a Guideline sentence, the district court appropriately considered the fact that the Bureau of Prisons could provide defendant with mental health treatment); *United States v. Boyd*, 218 Fed. Appx.539, 541 (7th Cir. 2007) (affirming Guideline range sentence and stating that the district court properly considered that a Guideline sentence would afford the defendant the opportunity to receive "vocational training and drug and mental health treatment"). Indeed, the Court may consider requesting that defendant be placed in prison with appropriate treatment options. *United States v. Ramsey*, 297 Fed. Appx. 519, 521 (7th Cir. 2008) (district court recommended that defendant be placed in a facility with comprehensive substance abuse treatment programs). Defendant clearly needs long term treatment to obviate any future criminal activity that may be the result of her substance and mental health issues.

In light of all of the Section 3553(a) factors, a sentence within the Guidelines range will help promote respect for the law, provide adequate deterrence, and serve as just punishment for defendant's criminal conduct.

## IV.    RESTITUTION AND SPECIAL ASSESSMENT

Restitution is mandatory in this case. Defendant owes $86,000 to Chase Bank. *See* Plea Agr. at 13.

Pursuant to 18 U.S.C. § 3013, and as defendant acknowledged in the Plea Agreement, the Court must impose a $300 special assessment. *See* Plea Agr. at 15.

## V.    PROPOSED CONDITIONS OF SUPERVISED RELEASE

The government recommends the imposition of a term of supervised release of three years. As previously described, defendant has serious mental health and substance abuse issues. The conditions of supervised release should encourage treatment, sobriety, lawful conduct, and gainful employment. Therefore, and in order to promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in defendant's rehabilitation and reintegration into society, the government supports Probation's recommendation for a three-year term of supervised release that includes the conditions set forth in the PSR.

### A.    Deterring Criminal Conduct and Protecting the Public

The following mandatory conditions would serve to afford adequate deterrence to criminal conduct, protect the public, and assist in defendant's rehabilitation:

- Not commit another Federal, State, or local crime (Mandatory Condition #1);

- Not unlawfully possess a controlled substance (Mandatory Condition #2);

- Cooperate in the collection of a DNA sample if the collection of such a sample is required by law (Mandatory Condition #5); and

- Refrain from unlawful use of controlled substances and submit to drug testing upon release (Mandatory Condition #6).

**B.    Supporting Rehabilitation & Reintegration**

The following conditions would support defendant's rehabilitation and reintegration into the community and would help ensure that the defendant is engaged in lawful pursuits:

- Seek, and work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip the defendant for employment (Discretionary Condition #4);

- Refrain from knowingly meeting or communicating with any person whom you know to be engaged or planning to be engaged in criminal activity (Discretionary Condition #6);

- Refrain from any use of alcohol, or narcotic drug or other or other controlled substance, without a prescription (Discretionary Condition #7)

- Refrain from possessing a firearm, destructive device, or other dangerous weapon (Discretionary Condition #8);

- Participate, at the direction of a probation officer, in a substance abuse program which may include urine testing up to a maximum of 104 tests per year and a mental health treatment program, which may include the use of prescription medications. (Discretionary Condition #9);

- Remain within the jurisdiction where supervision is authorized, unless granted permission to leave by the court or a probation officer (Discretionary Condition #14);

- Report to a probation officer as directed by the court or a probation officer (Discretionary Condition #15);

- Permit a probation officer to visit at any reasonable time at home, work, school, a community service location, or any other reasonable location specified by a probation officer, and permit confiscation of any contraband observed in plain view of the probation officer (Discretionary Condition #16);

- Notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer (Discretionary Condition #17);

- Notify a probation officer promptly, within 72 hours, if arrested or questioned by a law enforcement officer (Discretionary Condition #18)

- If you have not yet obtained a high school diploma or equivalent, you shall participate in a General Educational Development (GED) preparation curse and seek to obtain a GED within the first year of supervision. (Special Condition #1;

- You shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment,

13

perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed 200 hours; (Special Condition #3);

- You shall not incur new credit charges or open additional lines of credit without the approval of a probation officer unless you are in compliance with the financial obligations imposed by this judgment; (Special Condition #5);

- You shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release (Special Condition #6);

- You shall notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments (Special Condition #7);

- You shall pay any financial penalty that is imposed by this judgment that remains unpaid at the commencement of the term of supervised release. Your monthly payment schedule shall be an amount that is at least 10% of your net monthly income, defined as income net of reasonable expenses for basic necessities such as food, shelter, utilities, insurance, and employment-related expenses (Special Condition #10); and

- You shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court (Special Condition #11).

14

## VI.    CONCLUSION

For the foregoing reasons, the United States recommends a sentence within the Guideline range of 70-87 months' imprisonment, followed by a three-year period of supervised release.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    s/ *Jill Kolinski*                          
Jill Kolinski
Special Assistant U.S. Attorney
United States Attorney's Office
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-4729

Dated: October 29, 2018